UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH SPRIGGS, ET AL.,

                Plaintiffs,

v.

KEVIN SHANLIAN, ET AL.,

                Defendants.

_____ /

No. 12-14918

District Judge Nancy G. Edmunds

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

On November 5, 2012, Plaintiffs Keith Spriggs, Eric Spriggs, and Cassandra Ross filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging violation of their Fourth Amendment rights by officers of the Genesee County Auto Theft Investigation Network, the Genesee County Sheriff's Department, the Flint Township Police Department, and the Flint Police Department [Doc. #1]. Before the Court are the following dispositive motions:

1. Motion to Dismiss (pursuant to Fed.R.Civ.P. 12(c)) by Defendants Shanlian, Krish, Nuckolls, Witthuhn, and Shelton [Doc. #33].

2. Motion for Judgment on the Pleadings by Defendant Schreiber (and concurrence in Shanlian's, et al.'s motion)[Doc. #37].

3. Motion for Judgment on the Pleadings by Defendant Merrill (and concurrence in Shanlian's, et al.'s motion [Doc. #38].

4. Motion to Dismiss (pursuant to Fed.R.Civ.P. 12(c)) (and concurrence in Shanlian's, et al.'s motion) by Defendant Gauthier [Doc. #48].

All four motions have been referred for Reports and Recommendations pursuant to

-1-

28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend as follows:

(1) That Motion #33 be GRANTED IN PART AND DENIED IN PART, as follows:

> (a) GRANTED as to Defendants Krish, Witthuhn, Shelton, and Nuckolls, dismissing those Defendants with prejudice;

> (b) GRANTED as to Defendant Shanlian regarding the claims of entry onto the property to view the license plate, removal of the air conditioner, and the pointing of a firearm through the window;

> (c) GRANTED as to Defendant Shanlian regarding all claims by Plaintiffs Cassandra Ross and Eric Spriggs;

> (d) DENIED as to Defendant Shanlian regarding Plaintiff Keith Spriggs' Fourth Amendment claim based on entry into and search of the residence.

(2) That Motions #37, #38, and #48 be GRANTED, and that Defendants, Merrill, Schreiber,, Gauthier and Piercey be DISMISSED WITH PREJUDICE.

## I.   FACTS

Plaintiffs Keith Spriggs and Eric Spriggs were charged with the armed robbery of a WalMart store. They ultimately pled guilty to and were sentenced for larceny from a person. The allegations in their civil complaint arise out of a warrantless entry into and search of the home of co-Plaintiff Cassandra Ross shortly after the offense. All three Plaintiffs allege violation of their Fourth Amendment right to be free from unreasonable searches and seizures.

Attached to Plaintiffs' complaint as Exhibit 1 is the transcript of an evidentiary hearing held on January 12, 2012 in the Genesee County Circuit Court, with regard to the motion to suppress evidence–specifically, a laptop computer seized from the basement of the house– in *People v. Spriggs*, Genesee County Circuit Ct. No. 11-029523. Defendant

Officer Shanlian and Cassandra Ross testified. Many of the facts set forth in the complaint are drawn from that testimony.

At the time of the events in question, Shanlian, now Police Chief of Genesee County Parks and Recreation, was a Detective with the Mundy Township Police. *Complaint, Plaintiffs' Exhibit 1, Transcript of 1/12/12*, 4-5.  He testified that on February 21, 2011, he received a dispatch regarding an armed robbery that had occurred at a WalMart store.  He was given a description of the car allegedly involved in the incident, including the license plate number and the fact that there was damage to the front end.  *Id.* 5-6, 41.  He observed a car matching that description at 2538 Wolcott. The car was registered to Cassandra Ross at that address.  *Id.* 6.  The license plate of the car would not have been visible to a pedestrian on the street, and Shanlian testified that he entered the driveway of the house to see the license number.  *Id.* 36-37.

Shanlian testified that he knocked on the side door of the house for some number of minutes, with no response.  After he heard movement inside the house, he obtained tools to force open the door, but despite attempts with a crowbar and sledge hammer, he was unable to breach the door.  *Id.* 7, 21.  Ms. Ross came to the door to let him in, but was unable to open the door because of the damage to it.  Shanlian told Ross that he was looking for two armed robbery suspects.  Ross told him that she would let him in the front door.  Shanlian observed Keith Spriggs, who told Ross not to open the door unless the police had a warrant.  Thinking that the suspects might destroy evidence, Shanlian pushed in a window air conditioner and tried to hold them at gunpoint. However, Spriggs ran through the house. Shanlian let the other officers in through the front door.  Ross allowed the officers into the house. *Id.* 8-9, 24-25.  Shanlian testified that it was his decision to enter the property without a warrant.  *Id.* 37.

Upon entering the house, Ross was handcuffed, not as an arrestee, said Shanlian, but for the safety of the officers. *Id*. 10, 27, 31. After the house was cleared, the handcuffs were released, and Ross gave both verbal and written consent to search the house. *Id*. 10, 28-29.

At the evidentiary hearing, Cassandra Ross testified that Keith Spriggs had been staying at the house for about a year and a half, and that Eric Spriggs was an overnight guest. *Id*. 48-49. She said that she signed the consent form freely and voluntarily after the police removed her handcuffs. *Id.* 50, 58. She testified that when she heard the banging on the door and saw the police, she tried to open the door but could not. *Id*. 53.

Genesee County Circuit Judge Joseph J. Farah denied the motion to suppress as to Eric Spriggs, and granted the motion as to Keith Spriggs. Defendants Shanlian, Krish, Nuckolls, Witthuhn and Shelton have submitted Judge Farah's eight-page written decisions (one as to Eric and one as to Keith) as Exhibit 1 to their motion [Doc. #33].[1] Judge Farah found as follows:

(1) Eric Spriggs was an overnight guest in the house, and therefore had standing to challenge the search and seizure, pursuant to *Minnesota v. Olson*, 495 U.S. 91 (1991).

(2) The police officers "had probable cause, based on the information provided by dispatch, to believe the suspects in the armed robbery may be at the address to which the getaway vehicle was registered." *Eric's Opinion*, at 5.

(3) Notwithstanding probable cause, entry into the house was not justified by the "exigent circumstances" exception to the warrant requirement. Eric's Opinion states, at p. 7:

---

[1] Matters of public record, including court orders, may be considered in a Rule 12(b)(6) or Rule 12(c) motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001); *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010).

"Based on the totality of the circumstances, the Court finds that <u>had the police forced entry</u> into the home in the instant case, the police would have been acting unreasonably in violation of Eric's Fourth Amendment rights and any evidence discovered due to the forced entry would need to be suppressed because such entry without a warrant cannot be excused by exigent circumstances." (Emphasis in original).

(4) Ross "gave oral consent to the police to enter her home when she opened the front door and voluntarily let the police in." *Eric's Opinion*, at 7.

(5) There was no forced entry into the home prior to the police obtaining consent. "Although the police attempted to force entry into the home prior to obtaining consent, they did not succeed and instead entered only after Ross gave consent." *Eric's Opinion* at 8, fn. 8.

(6) Ross gave valid consent to search her home:

"In viewing the totality of the circumstances, it is clear Ross voluntarily, knowingly, and intelligently gave the police officers consent to search her home, both orally and in writing. Shanlian reasonably believed the consent Ross gave him was valid." *Eric's Opinion*, at 8.

(7) Eric Spriggs did not object to the search or to Ross's consent, nor was there evidence that Shanlian "should have reasonably believed Eric lived at the house in question or that Eric objected to the consent given by Ross." *Eric's Opinion*, at 8.

(8) Keith Spriggs' motion to suppress was granted, because he objected to the search:

"In this case, Keith objected to the police entering the home without a warrant. Although Ross gave valid consent, her permission 'does not suffice for a reasonable search' as to Keith because he was at the door and objected to the search." (Quoting *Georgia v. Randolph*, 547 U.S. 103, 121 (2006)). *Keith's Opinion*, at 8.

## II.   STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is subject to the same standard of review as a Rule 12(b)(6) motion to dismiss for failure to state a

-5-

claim upon which relief can be granted. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998). Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In assessing the legal sufficiency of a complaint, the court must first determine whether a complaint contains factual allegations, as opposed to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S.662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 556 U.S. at 676 (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007)). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."

### III.   DISCUSSION

Defendants Shanlian, Krish, Nuckolls, Witthuhn, and Shelton [Doc. #33] raise the following substantive issues, in which Defendants Piercey, Schreiber, and Merrill join [Doc. #34, #37, and #38]: (1) Plaintiffs' official capacity claims fail because they have not pled an unconstitutional policy or custom; (2) Plaintiffs have not pled a valid

Fourteenth Amendment Due Process claim; (3) Eric Spriggs' and Cassandra Ross' Fourth Amendment claims are barred by collateral estoppel; and (4) all Defendants are entitled to qualified immunity. Defendant Gauthier [Doc. #48] argues that Plaintiffs' guilty plea waives any review of the present Fourth Amendment claim.

### A.   Official Capacity Claims

An official capacity claim is, in effect, a claim against the public entity that employs the individual defendant. *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), the Supreme Court held that under § 1983, municipal liability is not unlimited, and that a municipality could not be liable on a theory of *respondeat superior*: "A municipality cannot be held liable *solely* because it employs a tortfeasor - - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691 (Emphasis in original). However, the *Monell* Court found that when the acts of individual employees represent the government's custom or policy, the municipality can be held liable. *Id* at 638.,

In *Johnson v. City of Detroit*, 944 F.Supp. 586, 598 (E.D. Mich. 1996), the Court explained that "[t]he requirement of an official policy distinguishes the acts of the employee from those of the municipality, ensuring that the municipality is held responsible only for the latter." A policy need not be formalized or written, but may be grounded in longstanding custom or usage. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Here, the complaint does not allege a plausible claim that the municipalities that employed these individual Defendants had a custom or policy, express or by implication, that resulted in any constitutional violations. Therefore, all official capacity claims

should be dismissed.

### B.   Fourteenth Amendment

Under 42 U.S.C. § 1983, the Court must examine the specific constitutional right alleged to have been violated, even if that right has been selectively incorporated into the Fourteenth Amendment Due Process clause. Thus, a claim of unlawful search and seizure is analyzed under the Fourth Amendment, not the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). However, I read this complaint as clearly raising a claim under the Fourth Amendment. Of course, *pro se* pleadings are to be liberally construed, *see Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), so to the extent that the Plaintiffs have erroneously relied on the Fourteenth Amendment, they are forgiven, and I will proceed to analyze the case under the Fourth Amendment.

### C.   Collateral Estoppel

Defendants argue that as a result of Judge Farah's decision on the motion to suppress, Plaintiffs Eric Spriggs and Cassandra Ross are collaterally estopped from challenging the validity of the search.

"The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give state court judgments the same preclusive effect that the state would afford such judgments." *McCormick v. Braverman,* 451 F.3d 382, 397 (6th Cir.2006). In Michigan, the application of collateral estoppel requires the following: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.' " *Gilbert v. Ferry,* 413

F.3d 578, 580–82 (6th Cir.2005) (citations omitted).  The requirement that "the same parties" be involved in both the prior and current case means the same parties *or their privies*. *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir.2004) (citing *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630–31 (1990)).  The Michigan Supreme Court has rejected the mutuality requirement for the defensive use of collateral estoppel.  *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 677 N.W.2d 843, 850–52 (2004); *see also Moses v. Dep't of Corr.*, 274 Mich.App. 481, 736 N.W.2d 269, 283 (2007) (acknowledging that *Monat* dissolved the mutuality requirement for defensive collateral estoppel).

First, it is important to understand what was before Judge Farah.  He denied a motion to suppress from evidence a laptop computer that was found in the basement of the house after Cassandra Ross consented to the search.  The facts and findings essential to that judgment were as follows: (1) The police had probable cause to believe that the armed robbery suspects were in the house; (2) Ross orally consented to the entry of her home when she opened the front door and let the police inside; (3) although the police unsuccessfully attempted to pry or force open a side door, they did not in fact gain entry at that time, and there was no forcible entry into the home prior to Ross giving her consent to enter; (4) Ross consented to the search of the home, both orally and in writing; and (5) Eric Spriggs did not object to the search or to Ross's consent, nor was there evidence that Shanlian "should have reasonably believed Eric lived at the house in question or that Eric objected to the consent given by Ross."

These questions were actually litigated, and Eric Spriggs, who was represented by counsel, had a full and fair opportunity to litigate these issues in his motion to suppress. His argument that deficiencies in the jail law library or his own lack of access to legal materials impaired his ability to challenge the search is without merit.  He had a lawyer.

-9-

His co-defendant brother had a lawyer.  The search issue was aggressively litigated, both in the written pleadings and at the evidentiary hearing.  Eric Spriggs was afforded his Sixth Amendment right to the effective assistance of counsel, *Strickland* v. *Washington*, 466 U.S. 668 (1984), as well as his First Amendment right to access to the court, *Martucci v. Johnson*, 944 F.2d 291 (6th Cir. 1991).  It cannot be plausibly claimed that he did not have a full and fair opportunity to challenge the search.

Moreover, Plaintiff Cassandra Ross, while not a party to the criminal case, was in privity to Eric Spriggs for purposes of collateral estoppel.  Privity between a party and a non-party requires both a "substantial identity of interests" and a "working or functional relationship ... in which the interests of the non-party are presented and protected by the party in the litigation." *Phinisee v. Rogers,* 229 Mich.App. 547, 553–54, 582 N.W.2d 852 (1988), quoting *Public Service Co. v. Osmose Wood Preserving, Inc.,* 813 P.2d 785, 787 (Colo.App.1991). "In its broadest sense, privity has been defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Sloan v. City of Madison Heights,* 425 Mich. 288, 295–96, 389 N.W.2d 418 (1986) (internal citations and quotations omitted).  Both Ross and Eric Spriggs had a Fourth Amendment-protected interest in the house. Indeed, Eric Spriggs, who was charged with a criminal offense, had perhaps a stronger interest in vindicating those rights than Ross, who was not charged. Thus, they had a "substantial identity of interests" that Eric Spriggs was able to present in the suppression motion.  Moreover, Ross herself testified at the evidentiary hearing.

Therefore, as to Eric Spriggs and Cassandra Ross, principles of collateral estoppel require the dismissal of claims relating to the Defendant Officers' consensual entry into the house and the ensuing search.

-10-

These Plaintiffs also claim a Fourth Amendment violation based on Shanlian having pushed out an air conditioner and brandished a firearm through the window. Judge Farah found that while the officers used crowbars and sledge hammers to attempt to breach the door, they did not in fact gain entry *into* the home until they obtained Ross' consent. *See Eric's Opinion*, at 7 and 8, fn. 8. The judge did not address Shanlian's testimony that he forcibly removed the air conditioner and pointed a gun inside the house. Accordingly, this claim is not barred by collateral estoppel. It is, however, dismissible on the merits.

Shanlian testified that after Ross said she was going to open the front door, he saw Keith Spriggs arguing with her and telling her not to open the door unless the police had a warrant.  He stated, "[S]o I pushed in the air conditioner and tried to hold them there at gunpoint so he wouldn't move.  He took off running throughout the house.  He then came around–I held my spot and let the other officers in the front door."  *Transcript*, at 8. There is no claim that Eric Spriggs was present or that he succumbed to Officer Shanlian's show of force.  Keith Spriggs did not succumb because he took off running. Ross had by that time given consent for the officers to enter. These facts do not plausibly establish a seizure of any of the Plaintiffs.  In *California v. Hodari D.,* 499 U.S. 621 (1991), the Supreme Court held that an arrest does not occur until a police officer lays hands on a subject or the subject voluntarily submits to a show of authority. *Id.* at 626 ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not.... An arrest requires *either* physical force (as described above) *or,* where that is absent, submission to the assertion of authority."). A person such as Keith Spriggs, fleeing from a police officer's show of force, is not then under arrest,

and thus has not been seized. *United States v. Williams,* 949 F.2d 220, 222 (6th Cir.1991).

Finally, Plaintiffs claim that a Fourth Amendment violation occurred when the police entered the driveway of the property to inspect the license plate of the car. A driveway may be, but is not necessarily considered part of the curtilage of a house that is protected by the Fourth Amendment. *See United States v. Jenkins,* 124 F.3d 768, 772 (6th Cir.1997). Courts consider four factors in determining whether an area surrounding a home constitutes curtilage: "the proximity of the area claimed to be curtilage to the home"; (2) "whether the area is included within an enclosure surrounding the home"; (3) "the nature of the uses to which the area is put"; and (4) "the steps taken by the resident to protect the area from observation by people passing by." *Id.* (quoting *United States v. Dunn,* 480 U.S. 294, 301 (1987)).

In this case, the car itself was in an unenclosed driveway, and plainly visible to passers-by. In fact, the officers were able to ascertain that the car matched the description that was given them, including the damage to the front end. While the license plate might not have been visible from the street, the residents of the house took no steps to otherwise conceal or thwart observation of the vehicle. In *United States. v. Galaviz*, 645 F.3d 347, 355 -356 (6th Cir. 2011), the Sixth Circuit found under similar circumstances that a driveway was not considered curtilage, and that the officers' observations were legitimized by the plain view doctrine:

> "Here, the driveway was directly adjacent to the house. However, it was not enclosed by a fence or other barrier and was short, with the portion of the driveway where Galaviz's car was parked directly abutting the public sidewalk. Further, no apparent steps were taken by the residents of the house to protect the driveway from observation by passersby—no hedges or bushes obstructed the view of the driveway from the sidewalk or street, for example. *See Estes,* 343 Fed.Appx. [97] at 101[(6th Cir. 2009)] (using these factors to find driveway not to be curtilage); *see also United States v. Pineda–Moreno,* 591 F.3d 1212, 1215 (9th Cir.2010) ('[B]ecause [defendant] did not take steps to exclude passersby from his driveway, he

-12-

cannot claim a reasonable expectation of privacy in it, regardless of whether a portion of it was located within the curtilage of his home.'). Therefore, police officers needed no warrant to enter onto the portion of the driveway on which Galaviz's car was parked, and thus they were lawfully in a position from which to view the interior of the vehicle."

For these reasons, the complaint should be dismissed in its entirety as to Plaintiffs Cassandra Ross and Eric Spriggs. As to Plaintiff Keith Spriggs, the complaint should be dismissed as to any claims that there was a Fourth Amendment violation preceding the officers' entry into the residence.

### D.    Qualified Immunity

Defendants concede that "Plaintiff Keith Spriggs objected to the entry by the officers and, at this time, there exists a question of fact as to whether his objection could invalidate Ms. Ross' consent." *See* Doc. #33, p. 13.  Instead, Defendants seek dismissal based on their claim of qualified immunity.

There are two inquiries in a qualified immunity analysis: (1) did the defendant violate a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful.  *Saucier v. Katz,* 533 U.S. 194, 121 (2001).  More recently, the Supreme Court reconsidered the sequential inquiry set forth in *Saucier,* concluding that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan,* 555 U.S. 223 (2009).

As to the first inquiry, Defendants hang their collective hat on two theories.  First, they argue that the officers reasonably believed that Ross' consent was valid as to all occupants of the house, even over Keith Spriggs' objection.  Second, they contend that "Defendants reasonably believed that exigent circumstances existed to justify a waratless entry and are therefore entitled to qualified immunity." Doc. #33, p. 13.

-13-

Defendant Shanlian admittedly knew that Keith Spriggs objected to the officers' entry into the house, and that Spriggs insisted that the police first obtain a warrant. Defendants rely on Shanlian's testimony that Ross told him that neither Spriggs lived at the house. However, Ross testified that although she told the police that Keith Spriggs had a different address, she also told them that "he had been staying there." *Transcript*, at 56.  At a minimum, then, there is a question of fact as to what Ross said and whether Shanlian had cause to believe that Keith had a protected interest in the house. In any event, Shanlian did not acquire this information until after he entered the house; at that point, the Fourth Amendment violation has already occurred, at least as to Keith Spriggs. Likewise, Shanlian's claim that he did not see any men's clothing (which Ross contradicted in her testimony) was based on observations made after he entered the house. Based on what Shanlian knew or should reasonably have known about Keith Spriggs' occupancy before he entered the house, there are sufficient questions of fact to preclude qualified immunity on this basis.

Defendants also argue that notwithstanding Keith Spriggs' objections, the entry into the house was justified by a "reasonable belief" that there were exigent circumstances.  In the criminal case, Judge Farah soundly rejected this claim.  He found that although "the police saw the suspect vehicle," they "had no evidence the occupants of the vehicle had entered the house."  *Keith's Opinion*, at 6.  In terms of Shanlian's claim that the police were trying to prevent the suspects' escape, Judge Farah held as follows:

> "Shanlian testified he believed exigent circumstances existed because he was concerned Keith was arming himself inside the home or was destroying the evidence.  No evidence has been presented that the police attempted to force entry into the home because they reasonably feared the suspects would escape the home.  In fact, Shanlian testified he set up a police perimeter around the house prior to knocking on the door. The police cannot justify entry into the home without warrant for the purpose of preventing Keith's escape." *Id*.

-14-

As to whether the police reasonably believed that evidence would be destroyed,

Judge Farah found as follows:

> "Shanlian was unsure if the suspects were destroying evidence.  The
> evidence in this case, a laptop computer, is not easily destroyed, so the
> police could not reasonably believe the evidence was being destroyed.  The
> Court rejects this as a basis to establish exigent circumstances." *Id.*

Finally, rejecting Shanlian's claim that a warrantless entry was necessary for the

protection of the officers, Judge Farah found:

> "In the instant case, the police knew the suspects were armed with a knife.
> However, police had no indication the suspects had access to a gun or were
> arming themselves inside the house in question at the time the police
> arrived.  No immediate action by the police was necessary in order to
> protect the police officers or any other person."  *Id.*[2]

The Defendants are correct that collateral estoppel cannot be applied offensively,

so Judge Farah's findings are not binding in this case.  *Hardesty v. Hamburg Twp.*, 461

F.3d 646, 651 (6th Cir. 2006)("collateral estoppel cannot be used offensively to preclude

the litigation of an issue addressed in an associated criminal case").  However, Judge

Farah's recitation of the evidence (and lack of evidence) supports the conclusion that

there are questions of material fact as to whether the entry into the house was justified by

exigent circumstances, and at least one trier of fact has found that Shanlian's claim of

exigent circumstances was *not* supported by the same evidence that forms the basis of the

present case.[3] For purposes of this motion, Keith Spriggs survives the first prong of the

---

[2] This case is therefore distinguishable from *Dickerson v. McClellan*, 101 F.3d
1151, 1160 (6th Cir. 1996) and *United States v. Bates*, 84 F.3d 790 (6th Cir. 1996), cited by
Defendants, which sanctioned warrantless protective searches where "the government is
able to prove they possessed information that the suspect was armed and likely to use a
weapon or become violent."

[3] To justify a warrantless search based on exigent circumstances, an officer "must
be able to identify specific facts which, combined with reasonable inferences from those
facts, give rise to the conclusion that the warrantless intrusion was appropriate." *See*

qualified immunity analysis.

He also survives the second prong, because the right in question was clearly established at the time of the constitutional violation. It has long been established that "[w]arrantless searches and seizures within a home are 'per se unreasonable[,] subject only to a few specifically established and well-delineated exceptions.'" *O'Neill v. Louisville/Jefferson County Metro Government* 662 F.3d 723, 730 (6th Cir. 2011), quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The two "specifically established and well-delineated" exceptions relevant to the present case are consent searches and searches based on exigent circumstances, and the right to be free from warrantless searches absent these exceptions was clearly established well before the intrusion in the present case. *See Steagald v. United States*, 451 U.S. 204 (1981). Citing *Steagald*, the Sixth Circuit in *Turk v. Comerford*, 488 Fed.Appx. 933, 944, 2012 WL 2897476, *8 (6th Cir. 2012), found that the right at issue in the present case had been clearly established at least as early as 1981:

> "Officer Stasenko violated Turk's right to be free from a warrantless search of his home for Mattice, absent consent or exigent circumstances. The Supreme Court's holding in *Steagald* clearly established this right in 1981. *Steagald*, 451 U.S. 204, 101 S.Ct. 1642. The officers who broke down Turk's door are not entitled to qualified immunity for their entry."

Thus, Defendant Shanlian, who made the decision to enter the house in violation of Keith Spriggs' clearly established Fourth Amendment rights, is not entitled to qualified immunity.

What about the other Officers/Defendants? Both the complaint and the evidentiary hearing transcript (which was filed with and incorporated into the complaint) focus on the

---

*United States v. Morgan*, 743 F.2d 1158, 1162 (6th Cir.1984). A claim of exigent circumstances is not supported by an officer's suspicions or beliefs that arise out of a *lack* of information. *Andrews v. Hickman County, Tenn*. 700 F.3d 845, 857 (6th Cir. 2012).

actions of Defendant Shanlian. Although the complaint formulaically alleges that each Defendant "entered the Plaintiffs' home and land surrounding their home without a warrant, consent or exigent circumstances for the purpose of conducting and seizure," *Complaint*, ¶¶ 10-16, Plaintiffs have not pled any *facts* that would plausibly support that claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to make out a plausible claim. *Iqbal*, 556 U.S. at 676.   Indeed, the complaint concedes, at ¶ 20, that the identities of the Officers other than Shanlian are unknown.  Therefore, Officers Nuckolls, Merrill, Schreiber, Krish, Witthuhn, Shelton, and Gauthier[4] must be dismissed for failure to state a claim.

The Plaintiffs' claim against Officer Piercey is that he "prepared the police report in the related criminal action, which claimed the Defendants entered the Plaintiffs' residence by way of consent and therefore engaged in the attempt to cover up the unlawful conduct of the defendants...." *Complaint*, ¶ 17.  Apart from the fact that this does not state a Fourth Amendment violation, Piercey's report was correct, the entry into the home was based on Cassandra Ross' consent, as Judge Farah found. That the police report did not recite a distinction between Ross' consent and Keith Spriggs' lack of consent, or contain a legal analysis of Fourth Amendment standing, does not state a plausible claim, particularly in view of the fact that the details of the search were fully presented to Judge Farah in the motion to suppress.  Piercey is entitled to dismissal.

If this Report and Recommendation is adopted, then, the Court will be left with one Plaintiff (Keith Spriggs), one Defendant (Kevin Shanlian), and one claim (violation

---

[4] Gauthier also claims that Plaintiffs' plea of guilty in the criminal case constitutes a waiver of a subsequent civil claim based on the search and seizure. While challenges to the search would be waived in the context of any criminal appeal or collateral proceeding, *see Tollett v. Henderson*, 411 U.S. 258 (1973), Gauthier has cited no authority in support of the proposition that a guilty plea in a criminal case bars a subsequent civil action.

of the Fourth Amendment based on Shanlian's entry into the premises).

## IV.   CONCLUSION

For these reasons, I recommend as follows:

(1) That Motion #33 be GRANTED IN PART AND DENIED IN PART, as follows:

> (a) GRANTED as to Defendants Krish, Witthuhn, Shelton, and Nuckolls, dismissing those Defendants with prejudice;

> (b) GRANTED as to Defendant Shanlian regarding the claims of entry onto the property to view the license plate, removal of the air conditioner, and the pointing of a firearm through the window;

> (c) GRANTED as to Defendant Shanlian regarding all claims by Plaintiffs Cassandra Ross and Eric Spriggs;

> (d) DENIED as to Defendant Shanlian regarding Plaintiff Keith Spriggs' Fourth Amendment claim based on entry into and search of the residence.

(2) That Motion #37, #38, and #48 be GRANTED, and that Defendants, Merrill, Schreiber, Gauthier and Piercey be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served

upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 24, 2014          s/ R. Steven Whalen
                                  R. STEVEN WHALEN
                                  UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on February 24, 2014, electronically and/or by U.S. mail.

                                  s/Michael Williams
                                  Case Manager to the
                                  Honorable R. Steven Whalen

-19-